UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

KENNETH C. MCKNIGHT,           )
                               )
              Plaintiff,       )   3:09-cv-00757-LRH-VPC
         v.                    )
                               )   **REPORT AND RECOMMENDATION**
NORTHERN NEVADA                )   **OF U.S. MAGISTRATE JUDGE**
CORRECTIONAL CENTER, *et al.,* )
                               )   February 7, 2012
              Defendants.      )
_____)

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion for summary judgment (#79).[1] Plaintiff opposed (#83) and defendants replied (#86).[2] Karen Walsh's declaration, plaintiff's medical progress notes, physicians' orders, restricted diet order forms, laboratory reports, and other relevant documents are filed under seal (#80).[3] The court has thoroughly reviewed the record and recommends that defendants' motion for summary judgment (#79) be granted.

**I. HISTORY & PROCEDURAL BACKGROUND**

Plaintiff Kenneth C. McKnight ("plaintiff"), a *pro se* inmate, is currently incarcerated at Warm Springs Correctional Center ("WSCC") in the custody of the Nevada Department of Corrections ("NDOC") (#96). The facts giving rise to this complaint occurred while plaintiff was housed at Northern Nevada Correctional Center ("NNCC") (#11). Plaintiff brings his complaint pursuant to 42 U.S.C. § 1983, alleging violations of his Eighth Amendment rights. *Id*. Plaintiff's

---

[1] Refers to the court's docket number.

[2] Plaintiff filed an additional opposition (#88) which the court will not consider. Filing additional oppositions to a motion without the court's leave is not allowed under Local Rule 7-2(b), and the court only considers plaintiff's first opposition (#83). Pursuant to Local Rule 7-2, motion practice consists of a motion, an opposition, and a reply.

[3] The court granted defendants' motion for leave to file confidential documents *in camera* and under seal (#91).

remaining claims after screening include the following: (1) count I Eighth Amendment denial of medical care claim against NNCC Dr. Marsha Johns, NNCC Dr. David Mar, and NNCC Nursing Director John Perry; (2) count II Eighth Amendment denial of medical care claim against Dr. Johns, Dr. Mar, and John Perry; and (3) count XV Eighth Amendment deliberate indifference to a substantial risk of serious harm claim based on conditions of confinement against NNCC Medical Director Dr. Karen Gedney (#10).[4]  Defendants Benedetti,[5] Gedney,[6] Mar, Johns, and Perry ("defendants") move for summary judgment on counts I, II, and XV.

In count I, plaintiff alleges that he suffers from an active staph infection and has open wounds on his face, arms, neck, back, legs, and buttocks (#11, p. 13).  Plaintiff claims that defendants Johns, Mar, and Perry violated his Eighth Amendment right to medical care when they denied plaintiff treatment for his staph infection. *Id*. Plaintiff alleges that he developed a staph infection in November 2007, while incarcerated at Lovelock Correctional Center ("LCC"). *Id*.

In count II, plaintiff alleges that he suffers from diabetes. *Id*. at 14. Plaintiff claims that defendants Johns, Mar, and Perry denied him treatment for his diabetes. *Id*. Plaintiff further states that defendants denied him a glucometer and glucose. *Id*. Plaintiff contends that the denial of treatment affected his eyes, kidneys, and feet, and caused muscle cramps, shaking of his hands, and clogged arteries. *Id*.

In count XV, plaintiff alleges that defendant Gedney altered his diet without conducting an examination of his diabetic condition. *Id*. at 23. Plaintiff claims this was a direct act of retaliation and was in deliberate indifference to a substantial risk of serious harm to plaintiff. *Id*. The court

---

[4]     Pursuant to 28 U.S.C. § 1915A, the court dismissed the State of Nevada, Lovelock Correctional Center, Lovelock Medical Center, and NNCC from this action (#10, #31). The court also dismissed counts III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, and XVI from this action (#10).

[5]     None of the remaining claims involves NNCC Warden defendant Benedetti. To the extent defendants' counsel discusses defendant Benedetti because the screening order did not explicitly dismiss him from this action, the court will address defendant Benedetti's alleged involvement in this lawsuit.

[6]     Defendants' counsel did not list defendant Gedney on the first page (#80, p. 1) of defendants' motion for summary judgment. However, because defendants' counsel discusses defendant Gedney in their motion, the court assumes this was an omission.

1   granted plaintiff's motion to add defendant Gedney on May 18, 2011 (#51).[7] However, the court will
2   not consider new allegations that plaintiff made in his motion to add a party (#32).

3         The court now recounts the treatment plaintiff received after his transfer to NNCC. On June
4   2, 2008, LCC Dr. Scott examined plaintiff and diagnosed him with "probable diabetes mellitus, type
5   II" (#80, Ex. B, p. 2; Attachment 1 (*sealed*)). On June 12, 2008, plaintiff was transferred from LCC
6   to NNCC. *Id.* at Ex. A, Attachment 1. On June 16, 2008, defendant Gedney placed plaintiff on a
7   2600 calorie American Diabetic Association ("ADA") diet as a result of plaintiff's past gastric
8   bypass. *Id.* at Ex. B, p. 10; Attachment 3.

9         On June 23, 2008, defendant Johns examined plaintiff and determined that plaintiff showed
10  symptoms of diabetes. *Id.* at Ex. B, p. 3; Attachment 1. Defendant Johns stated in his progress notes
11  that he would "await lab results" and "check on status of diet." *Id.* On July 3, 2008, defendant Johns
12  examined plaintiff and monitored his weight, blood pressure, temperature, pulse and respirations.
13  *Id.* During this visit, defendant Johns renewed plaintiff's ADA diet. *Id.* at Ex. B, p. 10; Attachment
14  3. Defendant Johns also "discussed at length with patient the pre-diabetes status (with
15  hypoglycemia) and need to remove all free sugar and adhere to diabetic diet." *Id.* at Ex. B, p. 3;
16  Attachment 1. Defendant Johns also examined plaintiff's skin condition, and noted that he would
17  "start Bactrim if return of skin lesions." *Id.*[8]

18        On August 7, 2008, defendant Mar examined plaintiff. *Id.* During this visit, defendant Mar
19  examined plaintiff's skin condition and evaluated his symptoms of diabetes. *Id.* Defendant Mar
20  also treated plaintiff for an episode of hypoglycemia. *Id.* Defendant Mar ordered cream for
21  plaintiff's skin, and advised him to monitor his diet in order to control his blood sugar levels. *Id.*
22  at Ex. B, p. 3; Attachments 1, 2. On September 3, 2008, defendant Mar evaluated plaintiff's blood
23  sugar level. *Id.* at Ex. B, p. 4; Attachment 1. Defendant Mar gave plaintiff a glucose tablet and

---

25      [7] The court's screening order permitted count XV to proceed against defendant Gedney (#10).
26  The court presumes that plaintiff filed a motion to add defendant Gedney because he did not originally name her as a defendant on the first three pages of his complaint (#11).

27      [8] According to the Mayo Clinic, bactrim is an antibiotic used to treat certain kinds of bacterial
28  infections.

3

advised him on a diet to control his blood sugar. *Id*. On this same day, plaintiff received a glucometer, a medical device for determining the level of sugar in the blood. *Id*. at Attachment 5.

On December 22, 2008, defendant Johns renewed plaintiff's ADA diet. *Id*. at Ex. B, p. 10; Attachment 3. On December 29, 2008, defendant Gedney renewed plaintiff's ADA diet and stated that it was needed because of plaintiff's gastric bypass. *Id*. On January 30, 2009, Dr. Johns ordered plaintiff to adhere to an ADA diet and stated that it was needed because of plaintiff's gastric bypass. *Id*. On February 3, 2009, Dr. Johns renewed plaintiff's ADA diet. *Id*. On July 13, 2009, defendant Gedney ordered plaintiff to continue to adhere to an ADA diet and stated the reasons for the diet as "diabetes/constipation." *Id*. Plaintiff filed his civil rights lawsuit on December 28, 2009 (#1).

Defendants filed the instant motion seeking summary judgment on all remaining claims (#79). Defendants filed plaintiff's medical records *in camera* and under seal, and included Karen Walsh's declaration summarizing plaintiff's medical records and reports (#80, Ex. B (*sealed*)).

Defendants argue they are entitled to judgment as a matter of law because defendants Johns, Mar, and Perry were not deliberately indifferent to plaintiff's medical needs in counts I and II, and because defendant Gedney was not deliberately indifferent to a substantial risk of serious harm to plaintiff in count XV (#79, pp. 7-8). Defendants state that they are entitled to summary judgment because plaintiff failed to exhaust his administrative remedies with regard to his claims in counts I, II, and XV. *Id*. at 9-12. Further, defendants argue that they are entitled to qualified immunity, that the suit against defendants in their official capacities should be dismissed, and that summary judgment should be granted in favor of defendant Benedetti because he did not personally participate in plaintiff's medical care. *Id*. at 12-14.

In his opposition, plaintiff argues that after his transfer to NNCC, he "was never again to be treated for the specific diagnosis of C.A.-M.R.S.A. [staph infection] or hypo-glycemic diabetes" (#83, p. 4).[9] Plaintiff claims defendants Mar, Johns, Perry, and Gedney "neglected [him and] denied any medical treatment or supplies." *Id*. However, plaintiff admits that he received Bactrim skin

---

[9] The court will not consider the new claims that plaintiff raises for the first time in his opposition. *389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999). Claims regarding defendants' alleged neglect which occurred after the filing of plaintiff's complaint will not be considered.

4

1  cream for his skin condition and a diet to treat his diabetes. *Id*. Plaintiff argues his "claim is
2  supported by sworn testimony under penalty of perjury;" however, this does not satisfy the
3  requirements of statements made under penalty of perjury. *Id*. at 7.[10] Moreover, it is unclear to the
4  court whether plaintiff attempts to submit his opposition as a sworn statement under penalty of
5  perjury or if he is referring to sworn testimony that he plans to provide to the court in the future. *Id*.
6  Even if the court construes plaintiff's opposition as sworn testimony and under penalty of perjury,
7  plaintiff's opposition is contrary to authenticated evidence defendants submit with their motion for
8  summary judgment.[11] The court will address whether plaintiff's opposition raises a genuine issue
9  of material fact for trial.
10     The court notes that the plaintiff is proceeding *pro se*. "In civil rights cases where the
11 plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the
12 benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir.
13 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II. DISCUSSION & ANALYSIS

**A.    Discussion**

**1.  Summary Judgment Standard**

Summary judgment allows courts to avoid unnecessary trials where no material factual disputes exist. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court grants summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). However, the Supreme Court has noted:

> [W]e must distinguish between evidence of disputed facts and disputed

---

[10]     In order for a declaration to be properly made under penalty of perjury, it should comply with 28 U.S.C. § 1746 and be stated in substantially the following form: "I declare under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)." *See* 28 U.S.C. § 1746.

[11]     The court notes that plaintiff states in his opposition that he requested extended copy-work and extended viewing time of his medical records. The court previously denied these motions (#89, #91).

> matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and submitting evidence which demonstrates the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson*, 477 U.S. at 248. Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

**B.      Analysis**

Plaintiff brings suit against defendants and alleges that defendants Johns, Mar, Perry, and Gedney violated his Eighth Amendment rights with respect to their treatment of his staph infection and diabetes (#11). Defendants filed a motion for summary judgment claiming that they were not deliberately indifferent to plaintiff's serious medical needs because they provided him with medical care and treatment (#79). To support this contention, defendants filed plaintiff's medical reports and records *in camera* and under seal (#80, Ex. B (*sealed*)).

**1.      Supervisory Liability – Defendants Perry and Benedetti**

Defendants move for summary judgment as to counts I and II against defendant Perry and as to all claims against defendant Benedetti (#79). During all relevant times, defendant Perry was the Director of Nursing at NNCC and defendant Benedetti was the warden at NNCC. *Id*. at 1.

"Liability under [§] 1983 arises only upon a showing of personal participation by the defendant. A supervisor is only liable for the constitutional violations of . . . subordinates if the

1  supervisor participated in or directed the violations, or knew of the violations and failed to act to
2  prevent them. There is no respondeat superior liability under [§] 1983." *Taylor v. List*, 880 F.2d
3  1040, 1045 (9th Cir. 1989) (citations omitted); *see also Hydrick v. Hunter*, 500 F.3d 978, 988 (9th
4  Cir. 2007); *Ortez v. Washington Cnty., State of Or.*, 88 F.3d 804, 809 (9th Cir. 1996) (concluding
5  it is proper to dismiss where there are no allegations of knowledge of or participation in an alleged
6  violation).
7        Plaintiff alleges that defendant Perry denied plaintiff treatment for his staph infection and
8  for plaintiff's diabetic condition, and that defendant Perry was deliberately indifferent to plaintiff's
9  serious medical needs (#11, pp. 13-14). However, the court's review of plaintiff's medical records
10 reveals that defendant Perry had no direct involvement in plaintiff's treatment for a staph infection
11 or diabetes. Because defendant Perry had no direct involvement in plaintiff's medical treatment
12 so as to give rise to liability based on an Eighth Amendment claim, he is entitled to summary
13 judgment in counts I and II.
14       With respect to defendant Benedetti, none of the claims which survived screening involves
15 defendant Benedetti (#10). The court assumes that defendants' counsel included defendant
16 Benedetti in defendants' motion for summary judgment out of an abundance of caution because
17 the screening order did not explicitly dismiss defendant Benedetti. However, because there is no
18 supervisory liability under section 1983 claims and because plaintiff's remaining claims do not
19 implicate defendant Benedetti, he is entitled to summary judgment.
20       **2.**      **Eighth Amendment – Deliberate Indifference to a Serious Medical Need**
21       A prisoner's claim of inadequate medical care arises under the Eighth Amendment. The
22 unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by
23 the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). To prevail on an action
24 alleging cruel and unusual punishment, a plaintiff's case must satisfy an objective standard – that
25 the deprivation was serious enough to amount to cruel and unusual punishment, and a subjective
26 standard – deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Wilson
27 v. Seiter*, 501 U.S. 294, 297-304 (1991). A prison official violates the Eighth Amendment when
28 he responds with deliberate indifference to an inmate's serious medical need. *Farmer*, 511 U.S.

1   at 834.

2   The objective requirement of a "serious medical need" is met if the failure to treat a
3   prisoner's condition could result in further significant injury or the "unnecessary and wanton
4   infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*,
5   429 U.S. 97, 104 (1976)). In this circuit, examples of serious medical needs include "the existence
6   of an injury that a reasonable doctor or patient would find important and worthy of comment or
7   treatment; the presence of a medical condition that significantly affects an individual's daily
8   activities; or the existence of chronic and substantial pain." *Lopez v. Smith*, 203 F.3d 1122, 1131
9   (9th Cir. 2000) (citations omitted).

10   The subjective standard of deliberate indifference requires "more than ordinary lack of due
11   care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835 (quoting *Whitley*, 475 U.S. at
12   319). The requisite state of mind lies "somewhere between the poles of negligence at one end and
13   purpose or knowledge at the other." *Id.* at 836. To prove deliberate indifference, plaintiff must
14   demonstrate that prison staff denied, delayed, or intentionally interfered with medical treatment
15   or that the way prison staff provided medical care indicates deliberate indifference, and that
16   plaintiff sustained damages as a result of such conduct. *Hutchinson v. United States*, 838 F.2d 390,
17   394 (9th Cir. 1988). Prison medical staff do not violate the Eighth Amendment simply because
18   their opinion concerning medical treatment conflicts with the opinion of the inmate-patient.
19   *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

20   Further, a difference of opinion between medical professionals concerning the appropriate
21   course of treatment generally does not amount to deliberate indifference to a serious medical need.
22   *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). However, a prisoner can establish that such
23   a difference of opinion amounted to deliberate indifference where "the course of treatment the
24   doctors chose was medically unacceptable under the circumstances," and such a course of
25   treatment was chosen "in conscious disregard of an excessive risk to the prisoner's health."
26   *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

27         **a.**    **Count I**
28   Plaintiff claims that defendants Johns, Mar, and Perry violated his Eighth Amendment right

1  to medical care when they denied plaintiff treatment for his staph infection (#11, p. 13).[12] Plaintiff
2  alleges that he has open wounds on his face, arms, neck, back, legs, and buttocks. *Id*. at 5.
3        Defendants argue they were not deliberately indifferent to plaintiff's serious medical need
4  (#79, pp. 7-8). Defendants do not argue that plaintiff's staph infection does not amount to a
5  serious medical need; however, they maintain that they provided plaintiff with adequate medical
6  care and treatment. *Id*. The court agrees that a staph infection is a serious medical need. *See*
7  *Estelle*, 429 U.S. at 104 (holding that a serious medical need exists if the failure to treat a
8  prisoner's condition could result in further significant injury or the unnecessary and wanton
9  infliction of pain). The court agrees with defendants' contention that plaintiff fails to demonstrate
10 evidence constituting deliberate indifference to his staph infection.
11       1)   <u>Defendant Johns</u>
12       With respect to defendant Johns, defendant Johns examined plaintiff on June 23, 2008, and
13 determined that plaintiff's staph infection had healed (#80, Ex. B, pp. 2-3; Attachment 1 (*sealed*)).
14 Defendant Johns examined plaintiff's skin lesions again on July 3, 2008, and stated that he planned
15 to "start Bactrim [upon] return of skin lesions." *Id*.
16       2)   <u>Defendant Mar</u>
17       With respect to defendant Mar, defendant Mar examined plaintiff on August 7, 2008, and
18 noted that plaintiff had multiple scabs and excoriations and suffered from neurodermatitis.[13] *Id*.
19 Defendant Mar prescribed cream for plaintiff's skin condition and ordered plaintiff to stop
20 scratching his skin. *Id*. This appears to be the last time that defendants treated plaintiff for his
21 staph infection prior to the filing of this lawsuit on December 28, 2009 (#1).
22       Defendants Johns and Mar were not deliberately indifferent to plaintiff's serious medical
23 need because they did not deny, delay, or intentionally interfere with plaintiff's medical care. *See*
24 *Hutchinson*, 838 F.2d at 394.

---

[12] Because the court recommends that summary judgment be granted as to defendant Perry in counts I and II based on his lack of involvement in plaintiff's treatment, it will not discuss counts I and II against defendant Perry.

[13] According to the Mayo Clinic, neurodermatitis is a skin condition characterized by chronic itching or scaling.

9

1    Plaintiff argues that the treatment he received was inadequate when compared to the
2 treatment he received from another physician at LCC (#83, p. 3). However, a difference in the
3 treatment provided between two physicians is not evidence of deliberate indifference unless
4 plaintiff can show that defendants' treatment protocols were "medically unacceptable." *Jackson*,
5 90 F.3d at 332. Plaintiff's statement in his opposition that defendants never treated plaintiff's
6 staph infection is contrary to the evidence before the court (#83, p. 4). Plaintiff himself admits that
7 he received Bactrim skin cream for his staph infection. *Id*. Plaintiff cannot avoid summary
8 judgment by relying solely on conclusory allegations that are unsupported by factual data. *See*
9 *Taylor*, 880 F.2d at 1045. "Uncorroborated and self-serving testimony" without more, will not
10 create a genuine issue of material fact precluding summary judgment. *See Villiarimo v. Aloha*
11 *Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).

12   Evidence shows that defendants responded to plaintiff's requests for care, examined him,
13 and treated his skin condition accordingly. Plaintiff's disagreement with defendants' treatment of
14 his staph infection is not evidence of deliberate indifference. Prison medical staff do not violate
15 the Eighth Amendment simply because their opinion concerning medical treatment conflicts with
16 the opinion of the inmate-patient. *Franklin*, 662 F.2d at 1344. Plaintiff presents no other evidence
17 of defendants' alleged deliberate indifference to his medical needs, nor does he demonstrate any
18 factual issues concerning whether the defendants were deliberately indifferent. The court
19 recommends that defendants' motion for summary judgment on this claim be granted.

20   **b.   Count II**

21   Plaintiff claims that defendants Johns, Mar, and Perry denied him treatment for his diabetes
22 (#11, p. 14). He states that he has been denied a glucometer and glucose for emergencies. *Id*.
23 Defendants do not argue that plaintiff's diabetic condition does not amount to a serious medical
24 need; however, they maintain that they provided plaintiff with medical care and treatment for his
25 diabetes (#79, p. 8.) The court agrees that diabetes is a serious medical need. *See Estelle*, 429 U.S.
26 at 104 (holding that a serious medical need exists if the failure to treat a prisoner's condition could
27 result in further significant injury or the unnecessary and wanton infliction of pain). The court
28 agrees with defendants' contention that plaintiff fails to demonstrate evidence constituting

1 deliberate indifference to his diabetic condition.

2   1)  <u>Defendant Johns</u>

3   Defendant Johns examined plaintiff and ordered laboratory tests on June 23, 2008 (#80, Ex. B, p. 2; Attachment 1 (*sealed*)).  On July 3, 2008, defendant Johns examined plaintiff again regarding his diabetic condition and "discussed at length with patient the pre-diabetes status." *Id*. at 3; Attachment 1.  Defendant Johns adjusted plaintiff's diet accordingly. *Id*.  Defendant Johns placed plaintiff on specialized diets for his diabetic condition on June 23, 2008, July 3, 2008, December 22, 2008, January 30, 2009, and February 3, 2009. *Id*. at 10; Attachment 3.

  2)  <u>Defendant Mar</u>

  Defendant Mar examined plaintiff for an episode of hypoglycemia on August 7, 2008. *Id*. at 3; Attachment 1.  Defendant Mar assessed plaintiff and addressed his concerns with his diabetic condition. *Id*.  On September 3, 2008, defendant Mar checked plaintiff's blood sugar and recommended a diet plan to treat his diabetes. *Id*. at 4; Attachment 1.  Further, September 3, 2008, plaintiff received a glucometer, a medical device for determining the level of one's blood sugar level. *Id*. at Attachment 5.

  Defendants Johns and Mar were not deliberately indifferent to plaintiff's serious medical need because they did not deny, delay, or intentionally interfere with plaintiff's medical care. *See Hutchinson*, 838 F.2d at 394.  Plaintiff argues that the diet defendants prescribed for his diabetes was insufficient when compared to the diet he received at LCC (#83, p. 4).  However, a difference in the treatment provided between two physicians is not evidence of deliberate indifference unless plaintiff can show that defendants' treatment protocols were "medically unacceptable." *Jackson*, 90 F.3d at 332.  Plaintiff's statement in his opposition that defendants never treated plaintiff for his diabetes is contrary to the evidence before the court (#83, p. 4).  Plaintiff himself states in his opposition that he received a special diet to treat his diabetes while at NNCC. *Id*.  Plaintiff cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor*, 880 F.2d at 1045.  "Uncorroborated and self-serving testimony" without more, will not create a genuine issue of material fact precluding summary judgment. *See Villiarimo*, 281 F.3d at 1061.  Evidence reveals that defendants responded to plaintiff's requests

11

1  for care, examined him, and treated his diabetes accordingly. Moreover, prison medical staff do
2  not violate the Eighth Amendment simply because their opinion concerning medical treatment
3  conflicts with the opinion of the inmate-patient. *Franklin*, 662 F.2d at 1344. Plaintiff presents no
4  other evidence of defendants' alleged deliberate indifference to his medical needs, nor does he
5  demonstrate any factual issues concerning whether the defendants were deliberately indifferent.
6  The court recommends that defendants' motion for summary judgment on this claim be granted.

7      **3.    Eighth Amendment – Conditions of Confinement**

8  An inmate may challenge the conditions of his confinement as a violation of his Eighth
9  Amendment right to be free from cruel and unusual punishment if he satisfies objective and
10 subjective standards. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). The objective standard
11 requires prison officials to provide inmates with adequate shelter, food, clothing, sanitation,
12 medical care, and personal safety. *Id*. A claim may arise if the conditions of confinement cause
13 a sufficiently serious deprivation. *Id*. The court must evaluate the circumstances, nature and
14 duration of the deprivation to determine whether it is inhumane or so egregious that it could result
15 in significant injury or unnecessary and wanton infliction of pain. *Id*.; *Clement v. Gomez*, 298 F.3d
16 898, 903 (9th Cir. 2002).

17     The subjective standard requires a showing that prison officials were deliberately
18 indifferent to the inmate's safety. *Johnson*, 217 F.3d at 731. Prison officials must "know of and
19 disregard an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Mere negligence
20 does not prove deliberate indifference. *Hutchinson*, 838 F.2d at 394.

21      **a.    Count XV**

22 Plaintiff claims that defendant Gedney did not properly treat plaintiff's diabetic condition
23 because she altered a portion of his diet without conducting an examination of his condition (#11,
24 p. 23). He asserts this was "cruel and unusual punishment, a gross misuse of power, and a
25 deliberate threat to [his] life and limbs." *Id*. On June 16, 2008, defendant Gedney placed plaintiff
26 on a 2600 calorie ADA diet and stated the essential medical reason for this diet was "high
27 fiber/gastric bypass" (#80, Ex. B, Attachment 3 (*sealed*)). On December 29, 2008, defendant
28 Gedney renewed plaintiff's ADA diet for the same medical reasons. *Id*. On July 13, 2009,

12

1  defendant Gedney placed plaintiff on a 2600 calorie ADA diet and stated the medical reason for
2  the diet was "diabetic/constipation." *Id.*

3        Plaintiff's claim that a change in his diet amounted to deliberate indifference to a
4  substantial risk of serious harm based on his conditions of confinement must first satisfy the
5  objective test, that the injuries resulting from his conditions of confinement are sufficiently serious.
6  *Johnson*, 217 F.3d at 731. While plaintiff states in his opposition that he "suffered severely from
7  medical deprivation," he does not substantiate his alleged severe injuries with evidence other than
8  his allegations in the complaint and opposition (#83, p. 4). Plaintiff's unsupported allegations fall
9  short of the objective standard requiring a sufficiently serious deprivation. Even if plaintiff were
10 able to prove that he suffered serious injuries as a result of a change in his diet, plaintiff is unable
11 to prove that defendant Gedney acted with deliberate indifference to his health and safety.

12       Plaintiff fails to satisfy the subjective standard that defendant Gedney acted with deliberate
13 indifference to a substantial risk of serious harm. *Johnson*, 217 F.3d at 271. Nothing in the record
14 suggests that defendant Gedney knew or had reason to know of a health risk related to the diets she
15 ordered. *See Farmer*, 511 U.S. at 837 (holding that "a prison official cannot be found liable under
16 the Eighth Amendment for denying an inmate humane conditions of confinement unless the
17 official . . . [was] aware of facts from which the inference could be drawn that a substantial risk
18 of serious harm exist[ed], and . . . [drew] the inference)." There is no evidence that defendant
19 Gedney ignored or failed to respond to plaintiff's medical needs, or that plaintiff suffered damages
20 from any deliberate indifference. To the contrary, defendant Gedney treated plaintiff's diabetes
21 and stated medical reasons for the diets she ordered, including that plaintiff needed the diet as
22 treatment for his diabetes (#80, Ex. B, Attachment 3 (*sealed*)).

23       Prison medical staff do not violate the Eighth Amendment simply because their opinion
24 concerning medical treatment conflicts with the opinion of the inmate-patient. *Franklin*, 662 F.2d
25 at 1344. Plaintiff's opinion that defendant Gedney did not adequately treat plaintiff is insufficient
26 to prove deliberate indifference to plaintiff's health. Even if plaintiff believes that defendant
27 Gedney was negligent in her treatment plan, this would be insufficient to prove deliberate
28 indifference. *See Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional

violation merely because the victim is a prisoner."). The conditions of confinement, as acknowledged by plaintiff and proven by defendants' evidence, provide for access to medical care, routine medical examinations, and treatment and do not evidence an objective risk of serious harm or deliberate indifference. Thus, plaintiff fails to show a genuine issue of material fact regarding this claim and summary judgment should be granted in count XV.[14]

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that defendants met their burden of proving that there are no genuine issues of material fact for trial. As such, the court recommends that defendants' motion for summary judgment (#79) be **GRANTED** as to counts I and II against defendants Mar and Johns. The court further recommends that summary judgment be **GRANTED** as to count XV against defendant Gedney. The court also recommends that summary judgment be **GRANTED** as to defendants Perry and Benedetti because of their lack of personal involvement in plaintiff's medical care.

### IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment on the issue of Eighth Amendment deliberate indifference to serious medical needs against defendants Mar and Johns (#79) be **GRANTED** in counts I and II.

**IT IS FURTHER RECOMMENDED** that defendants' motion for summary judgment as to plaintiff's Eighth Amendment conditions of confinement claim against defendant Gedney (#79) be **GRANTED** in count XV.

**IT IS FURTHER RECOMMENDED** that summary judgment (#79) be **GRANTED** for defendants Perry and Benedetti based on their lack of personal involvement in plaintiff's medical care.

**DATED**: February 7, 2012.

_____
**UNITED STATES MAGISTRATE JUDGE**

---

[14] Because the court recommends granting summary judgment based on plaintiff's failure to demonstrate that defendants acted with deliberate indifference, the court need not reach issues of exhaustion, Eleventh Amendment immunity, or qualified immunity.